### MANVILLE v. LAWTON *et al.*

(*Supreme Court, General Term, First Department.*　June 29, 1892.)

PRINCIPAL AND AGENT—DUTIES OF AGENT.

    The complaint in an action for damages for fraud practiced in the purchase of stock of a corporation, as corroborated by the evidence, alleged that defendant, knowing of the existence of a pool of stock, of plaintiff's desire to procure certain stock from the then holder to go into the pool, of the real or supposed necessity of buying them through defendant as intermediary, and of the authority of one of the poolers to buy on account of or with the money of plaintiff, agreed with him and undertook for a subinterest in the pool stock, as compensation for his services, to buy the stock for the pool with plaintiff's money, and did buy it, charging plaintiff a sum greatly in excess of the price he actually paid therefor. *Held,* to be a *prima facie* case of the agency of defendant to buy the stock for plaintiff, and that defendant could not therefore buy it at one price for himself, and sell it to plaintiff at an enhanced price.

Appeal from circuit court, New York county.

Action by John S. D. Manville against J. Warren Lawton and others to recover damages for a fraud alleged to have been practiced by defendants in the purchase of shares of the capital stock of two corporations, which shares were paid for by plaintiff to defendant Lawton.　From a judgment entered on a nonsuit directed upon the close of plaintiff's case, plaintiff appeals.　Reversed.

Argued before VAN BRUNT, P. J., and O'BRIEN and PATTERSON, JJ.

*George W. Carr,* for appellant.     *John Cummins, (John E. Parsons,* of counsel,) for defendant Lawton.

PATTERSON, J.   On the trial of this action, and on motion of the defendant Lawton, the complaint was dismissed, and we now have to consider whether, on the pleadings and evidence, a *prima facie* case was made out against the defendant named, in any aspect entitling the plaintiff to recover. The action was brought to recover damages against Lawton and one Jackson for a fraud alleged to have been practiced by them in the purchase of shares of the capital stock of two corporations, and which shares were paid for by the plaintiff to Lawton. The complaint is so framed as to charge a conspiracy to cheat on the part of Lawton, Jackson, and one Thompson; the latter not being made a party. A synopsis of the pleadings is necessary to present intelligibly the questions involved in the appeal. The complaint is prolix and diffuse, but its substantial averments are the following, viz.: That at the times mentioned in it there were two existing corporations organized under the laws of the state of New York, one called the "Kennedy Brick & Tile Company," and the other the "Union Brick & Tile Manufacturing Company;" that these two corporations were, in effect, controlled by the same persons, and that Jackson was a director and the general manager of the Kennedy Company, and the president of the Union Company, and Lawton a director and the attorney and counsel of both companies; that the plaintiff was induced by false statements of Jackson or Thompson or both to believe the stock of the companies was of enormous value; and that on the 4th day of February, 1884, he, (the plaintiff,) Jackson, and Thompson entered into a written agreement, whereby he was to purchase 63 shares of the Kennedy stock from one Phalen at the price of $12,600, and those shares were to be be pooled with 8 of the same stock owned by Jackson and 10 owned by Thompson, and the dividends or earnings thereon were to be applied in certain ways, and when that was done the pool was to be dissolved, and all the shares divided, one half to the plaintiff, and one fourth to each of the other parties; and that it was further agreed that all other shares of stock bought by Jackson and paid for with money furnished by the plaintiff should be transferred to and held by the pool in the same manner as the 63 shares. It is further alleged that Lawton knew of this agreement, and that some time in February, March, or April, 1884, "the said defendants Lawton and Jackson formed a combination and conspiracy to cheat and defraud plaintiff by means of false and fraudulent representations and fraudulent concealments and fraud, and did cheat and defraud plaintiff out of at least $11,500 as hereinafter set forth." The complaint then proceeds to narrate the history of the particular transaction which forms the basis of this action. It recites that in the purchase of the Phalen stock the plaintiff had been grossly deceived by Jackson, and paid him $12,600 on the representation it had cost that, when in reality it had been bought for $6,300; that Lawton was aware of that deception; that in or before the month of April, 1884, Jackson, with the knowledge of Lawton, and conspiring with him further to defraud the plaintiff, proposed that the latter should purchase for the pool stock belonging to the estate of one Kennedy, viz., 130 shares of the Kennedy stock, and 190 shares of the Union stock, all which was then in pledge to one Rogers, and it was anticipated it would be sold in default of payment of the debt to which Rogers held it as collateral; that Jackson undertook to make the purchase as cheaply as possible, provided the plaintiff would furnish the money, and that the plaintiff, relying on certain alleged representations as to value, and that he would not be called upon to pay more than the shares were bought for, agreed to furnish the money, and thereupon Jackson, with the knowledge, etc., of Lawton, agreed to buy the shares at as small a cost as possible; that all this was a concocted scheme to get money from the plaintiff; that it was first ar-

ranged that Lawton was not to be known in the transaction, but that, the intended purchase from Rogers falling through because he could not make title by foreclosing the pledge, the executors of Kennedy's estate having redeemed the hypothecated stock, the intervention of Lawton became necessary; that the plaintiff had agreed to advance $13,500 for these shares, but, their procurement in the manner and for the price contemplated being impossible, Lawton and Jackson conceived another scheme, and the latter, with the knowledge and assent of Lawton, represented to the plaintiff that Lawton could purchase for the pool these shares of Kennedy's estate for $17,650; that Lawton had agreed to purchase them, ostensibly in his own name, but really for the pool; and that the plaintiff, believing the representation that Lawton was acting for the pool, and not for himself, paid Lawton $17,650, who only paid $6,500, for 100 shares of the Kennedy stock and 192 shares of the Union stock; that Lawton was acting in the matter as an agent, and that he (the plaintiff) believed he was paying the Kennedy estate through the instrumentality of Lawton; that Lawton's compensation for his services was to be a subinterest in the pool, and that by reason of the conspiracy and fraud the plaintiff was cheated out of $11,500. Lawton's answer only appears on the record, and he was alone the contestant of the plaintiff on the trial. He admits the purchase of the shares from the Kennedy estate. He denies knowledge or information that Jackson and Thompson were acting for the plaintiff, or in conjunction with him, and he avers that they were dealing for themselves, as he believed; that no arrangement or agreement was made with them, or either of them, by which they were to profit from the purchase by sharing in the proceeds of a resale to the plaintiff, and that he bought the shares from the Kennedy estate for himself; that he had no interest in the pool, and was to have none, and that the plaintiff paid for the shares on his own judgment as to their value; that he made no representations whatever to the plaintiff, nor did he authorize any to be made; that he did not know of the Phalen purchase, and was not aware of the facts alleged against him as constituting him a conspirator, and that he did not act as agent in the transaction for any one.

The nonsuit was asked for on the following grounds: *First.* "That, if the facts show any claim by plaintiff against any one, or any claim against Lawton by any one, it can only be prosecuted in a suit for an account of the pool which the plaintiff's witnesses testify was formed, consisting of the plaintiff, Jackson, Thompson, and Lawton; also that the evidence wholly fails to prove that any misrepresentations were made by Mr. Lawton." *Second.* "In regard to agency the proofs wholly fail to make out that Lawton was employed by Manville [the plaintiff] to purchase stock from the Kennedy estate." *Third.* "The transaction of itself repudiates [sic] any pretense that Lawton acted for Manville to obtain the stock from the Kennedy estate." *Fourth.* "That there is no proof of the cause of action alleged in the complaint, and there is no proof of any other cause of action." The learned judge at the circuit did not specify on what ground or grounds he dismissed the complaint. The record merely states: "Motion to dismiss complaint granted, and plaintiff excepts." The court declined to allow the case to go to the jury on the question of agency or on any other question. If the right of the plaintiff to recover of the defendant Lawton depends upon the establishment of a conspiracy between him and Jackson and the accomplishment of the purpose for which the conspiracy was formed it may be conceded there was a failure of proof. Whatever moral impressions one may have on reading the whole proof, there is not that clear, direct, and convincing evidence requisite to sustain the allegations of the complaint in that behalf. But that a gross fraud was practiced upon the plaintiff by some one is sufficiently shown, and the consequences to him of its perpetration were that he was induced to pay $11,500 more than the stock was bought for on his account, and that that

sum has found its way into Lawton's pocket. But in order to hold Lawton, if he is otherwise liable for the fraud, it was not necessary that an unlawful or fraudulent combination or confederacy to cheat should be proven as charged in the complaint. *Garner* v. *Mangam*, 17 Wkly. Dig. 562. That is not the gist of the action. In *Hutchins* v. *Hutchins*, 7 Hill, 107, it is said that an allegation of conspiracy between parties defendant to commit a wrong is of no importance as respects the ground and cause of action. "A simple conspiracy, however atrocious, unless it resulted in actual damage to a party, never was the subject of a civil action; not even when the old form of a writ of conspiracy in its limited and most technical character was in use." Under that writ, unless the conspiracy was proven, the action failed; and it is also said in the case cited that the writ did not lie at common law, except where the conspiracy was to indict a party for either treason or felony, whereby his life was put in peril, and after acquittal. All other cases of conspiracy in the books are but actions on the case, and, where several are sued, and it turns out on the trial that only one was concerned, the plaintiff may still recover against that one, precisely as if he had been sued alone. "The conspiracy or combination is nothing, so far as sustaining the action goes; the foundation of it being the actual damage done to the party." And so it is likewise said in *Verplanck* v. *Van Buren*, 76 N. Y. 259, that in an action on the case for conspiracy, or acts of that nature, evidence of a technical conspiracy is not essential, and the conspiracy mere matter of aggravation. If, therefore, the complaint in the case at bar contains sufficient allegations, irrespective of the charge of conspiracy, against the defendant Lawton, and the evidence supports them, the complaint was improperly dismissed. Although not stated in a connected or methodical form, enough is set forth in the complaint to charge the defendant Lawton. It is in substance alleged that he, knowing of the existence of the pool, of Jackson's authority to buy on account of or with the money of the plaintiff, of the desire of the plaintiff to procure the Kennedy shares from the then holder of them, of the failure to procure them from Rogers, of the real or supposed necessity of buying them through him as an intermediary, undertook, for a reward to be paid him, to wit, his being admitted to an interest in the shares of Jackson and Thompson in the pooled stock, to buy those Kennedy shares for the pool with the plaintiff's money; that he did buy certain shares of that stock for $6,500, but charged the plaintiff $17,600 for them, and received the money, and thus, by his infidelity and fraud, cheated the plaintiff to the extent of $11,500.

The crucial issue of fact relates to the alleged agency, and the evidence was sufficiently strong on that subject to have carried the case to the jury. There was enough shown to call upon the defendant to meet the issue by countervailing proof. If he were not acting for himself he was bound to turn the stock into the pool at the price he paid for it. To quote the language of the court (per RAPALLO, J.) in *Dutton* v. *Willner*, 52 N. Y. 318: "It is a well-settled and salutary rule 'that a person who undertakes to act for another in any matter shall not in the same matter act for himself.' It is only by a rigid adherence to this simple rule that all temptation can be removed from one acting in a fiduciary capacity to abuse his trust, or seek his own advantage in the position which it affords him. One consequence of a violation of the rule is that the agent must, at the option of his principal, account to him for any profit he made in the transaction." Applying this rule to Lawton's relations with plaintiff, we find the testimony of Jackson direct and clear on the points that Lawton knew a purchase was sought to be made by Manville from the Kennedy estate of stock to be placed in the pool; that the plaintiff's money or credit was to be used in making it, and that, as consideration for his services in effecting a purchase, Lawton was to receive one half of the interest of both Jackson and Thompson in the stock thus to be bought for the pool. It

is true that the plaintiff never spoke to Lawton on the subject until after the stock was bought and paid for, but Jackson testifies that he told Lawton that Manville wanted the stock, and asked him where it could be had, and, learning that but 100 shares of the Kennedy Company stock could be procured, Thompson and he agreed with Lawton that, if the latter would put in 30 shares of his own stock, and thus apparently secure for Manville the same number of shares of that stock as had been previously represented could be secured, on the termination of the pooling contract Lawton might take out his 30 shares before there was any division of stock. On the subject of Lawton's connection with the purchase, Jackson swore that Manville arrived in New York from Colorado, which was his place of residence, about May 12th, and on the evening of the same day Jackson and Thompson met Lawton at the New York Club, and Thompson said: "Mr. Lawton, we have come down to see you. Mr. Manville has arrived here to buy 130 shares of the Kennedy Brick stock and 190 shares of the Union stock that was hypothecated to Mr. Rogers. Where can we get that stock? as Mr. Manville is bound to have it." Mr. Lawton said he did not know where that amount of stock could be had for love or money. He might get 100 shares from the Kennedy estate; he did not know. Mr. Thompson said: "Mr. Lawton, put in thirty shares of your own stock, and Mr. Jackson and myself will hold you harmless." He further testified: "I never said to defendant Lawton, nor did Thompson ever say, in my presence, to him, that I was purchasing the stock known as the 'Kennedy stock' through Lawton for myself, or for Thompson and myself, etc. It was clearly understood that the stock was being bought for Mr. Manville. Lawton knew that neither Thompson nor myself jointly or singly was buying the stock. It was well known to Mr. Lawton that it was being bought for Mr. Manville." And again: "Lawton knew that Mr. Thompson represented Mr. Manville. He also knew that Mr. Manville was to be the purchaser of the Kennedy estate stock. I think Mr. Thompson told him so." Thompson also testifies to facts showing that Lawton knew from the time the subject of a purchase from Rogers was under consideration, that Manville, through Jackson or Thompson, was seeking this Kennedy stock, and he says that the matter "was talked over between Mr. Jackson, Mr. Lawton, and myself, about our having this pooling arrangement with Mr. Manville, and this stock was to go into the pool. I can't tell you just how it came up, but the outgrowth of it was that Mr. Lawton was going to loan us money on Mr. Manville's note, and when the transaction was carried through Lawton was to take with us one sixth; that is, so far as this stock was concerned, Mr. Lawton, Mr. Jackson and myself were each to take one third of the pool when the pool was finally liberated." This witness also swore that it was well understood by Lawton that, "if this deal went through, it was Manville's money that was going to carry it," and that, if Lawton would advance enough of his own stock to make up the 130 shares, it was agreed that these 30 shares should be withdrawn and restored to Lawton before the division of the other pooled stock was made. In view of the situation of the parties, of the relation of Lawton to the whole transaction, there was evidence enough to go to the jury that he was acting for other persons; that Manville's money was to be used in a transaction to buy the Kennedy stock for him directly from the estate; that it was not contemplated that Lawton himself was to be a principal, and that he knew he was to be merely an agent or negotiator, and that he was to find his compensation in being admitted to share in the ultimate division of this particular stock. If the testimony of Thompson and Jackson is to stand uncontradicted, as it now does, the agreement they say was made by Lawton with them is utterly incompatible with the idea that he had the right to purchase from the Kennedy estate for himself, or that he did so, and then dealt at arm's length for a resale. It was proven by Mr. Jandon, the executor of Mr. Ken-

nedy's will, that all Lawton paid for the shares was $6,500. On this question of agency the case was improperly withdrawn from the jury.

It is contended by the defendant that any recovery by the plaintiff must be through an accounting of the pooled interests. But that is not so, for two reasons. By the testimony of the witnesses named it is clear that Lawton had no interest in the pool generally, only a subinterest in the shares to be distributed to Jackson and Thompson, precisely as a third party may have a subinterest in one partner's share of copartnership profits without being a member of the firm, or a proportionate interest in the share of one who is a partner in the assets on a winding up; and, again, because the stock only was pooled, and not Manville's money, and this action was brought virtually to recover back so much of that money as it is alleged Lawton took to himself, and which belonged to the plaintiff, and no one else. We are of opinion that the learned court erred in dismissing the complaint; that Lawton is liable on the proof as it now stands; and that the judgment appealed from must be reversed, and new trial ordered, with costs to the appellant to abide the event.

All concur.